UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

STUART A. Y.,[1]

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

Defendant.

Case No.: 3:25-cv-01181-GPC-BJW

**ORDER REMANDING TO THE ALJ**

**[ECF No. 1]**

On May 8, 2025, Plaintiff Stuart Allan Young ("Plaintiff") filed an application seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application for disability insurance benefits. ECF No. 1. After careful consideration of the pleadings, the supporting documents, and the applicable law, the Court **REMANDS** this matter for further analysis consistent with this order.

**BACKGROUND**

Plaintiff filed an application for disability insurance benefits pursuant to Title II of

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C § 406(g)] will refer to any non-governmental parties by using only their first name and last initial."

the Social Security Act on December 28, 2021, alleging a disability onset date of December 21, 2020. AR 59. Plaintiff alleged disability based on a back injury, degenerative arthritis of the lumbar spine, a tailbone injury of the coccyx with displacement, PTSD, depression due to PTSD, anxiety due to PTSD, memory problems, and trouble retaining information. *Id.* The Commissioner denied Plaintiff's claims for benefits upon initial review on April 25, 2022, and again upon reconsideration on January 6, 2023. AR 71, 87. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place telephonically on December 21, 2023, before ALJ Andrew Verne. AR 17, 35, 101. On March 27, 2024, ALJ Verne issued a decision denying Plaintiff's claim for benefits, finding that Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R § 404.1567(c) and can perform past relevant work as a security officer. AR 23-29. ALJ Verne further concluded that Plaintiff had not been disabled from this alleged disability onset date through March 27, 2024, the date of the ALJ's decision. AR 30. Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied Plaintiff's request for review on April 3, 2025. AR 1. On May 8, 2025, Plaintiff commenced the instant action seeking judicial review of the Commissioner's decision. ECF No. 1.

**A. Plaintiff's Background & Testimony**

Plaintiff was born on January 24, 1968. AR 41, 172. Plaintiff worked as a security guard at the Federal Building in San Diego. AR 42. Plaintiff was initially employed with US Protect Corporation from 2004 to 2009 and later for Paragon Systems from 2009 to 2021.[2] AR 213. He became unable to work due to his disabling condition on December 21, 2020. AR 172. Plaintiff claims that he suffers from a back injury, degenerative arthritis of the lumbar spine, a tailbone injury of the coccyx with displacement, PTSD,

---

[2] Plaintiff was consistently employed as a security guard at the Federal Building in San Diego during this time, but the company taking the contract at the federal building switched every five to ten years, thus resulting in the transfer of employment. AR 43.

depression due to PTSD, anxiety due to PTSD, memory problems, and trouble retaining information. AR 212. He claims that his injuries cause him difficulty standing or walking for long periods of time and negatively impact his ability to lift, squat, bend, reach and kneel. AR 231-236. Specifically, Plaintiff cannot stand or walk for a long time, noting that he is limited to fifteen minutes of standing before his back pain "starts to take over." AR 231. He also has difficulty sleeping as his lower back pain keeps him moving throughout the night. AR 232. Plaintiff further claims that his posttraumatic stress disorder makes him irritable, unmotivated, and distrusting of others. AR 468.

Plaintiff lives alone. AR 231. On most days, Plaintiff spends a significant amount of time sitting on the couch and enjoys watching TV. AR 232, 235. He completes indoor household chores, like cleaning and laundry, but finds prolonged standing difficult. AR 233. He notes difficulty in personal care, claiming that bending to put on pants and shoes is very difficult. AR 232. Plaintiff goes outside throughout the day for food, including to secure lunch and dinner; he does not prepare his own meals given his difficulty standing in place. AR 233, 235. According to Plaintiff, his life is less active, and his PTSD has worsened due to back pain. AR 235, 237.

At the December 21, 2023 hearing before the ALJ, Plaintiff testified that he is only able to stand for thirty minutes before he starts to feel extreme pain in his tailbone and lower back. AR 48. He noted that he can stand for thirty minutes when on pain medication and feels more pain when he forgets to take his pain medication. AR 49-50. Plaintiff also needs to be off his feet for twenty to thirty minutes before he can stand for another thirty minutes, but the more he stands, the more the pain progresses. AR 48-49. Plaintiff has also been to the emergency room for anxiety and has been taking mental health medication prescribed from the VA for several years. AR 46-47.

**B. Lay Testimony from Plaintiff's Son, David Y.**

Plaintiff's son, David Y., filed a function report detailing his observations of

Plaintiff's symptoms and functional limitations.[3] AR 201-208. Mr. Young noted that Plaintiff is no longer able to go on hikes and can only walk for a quarter of a mile before needing to rest. AR 206. Mr. Young also stated that Plaintiff does not prepare his own meals and finds it difficult to stand in one place for a prolonged period. AR 201, 203. Mr. Young has heard complaints from Plaintiff about back pain when getting up in the morning and claims Plaintiff has a noticeable limp when walking. AR 201-202. According to Mr. Young, Plaintiff struggles with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks. AR 206.

**C. The Medical Record**

1. Dr. Eric Olson

Dr. Eric Olson is Plaintiff's primary care doctor and treating physician. On June 11, 2021, Dr. Olson reported that Plaintiff suffered a fall in summer of 2020, resulting in low back and coccyx pain. AR 325-26. Dr. Olson further reported that the disabling condition was preventing Plaintiff from working longer than expected due to the complex injury from the fall. AR 327. Dr. Olson noted chronic lower back and coccyx pain as the chief complaint during an additional visit on October 20, 2021, and reported osteoarthritis of the lumbar spine, injury of the coccyx, pain in the coccyx, and chronic low back pain as some of Plaintiff's active problems. AR 293-94. On July 18, 2022, Dr. Olson completed a physical residual functional capacity assessment regarding Plaintiff. AR 650-57. In that assessment, Dr. Olson reported Plaintiff could occasionally lift and/or carry twenty pounds, stand and/or walk for less than two hours and sit for less than six hours in an eight-hour workday. AR 651. He further reported that Plaintiff developed muscle spasms and back pain when performing activities such as stooping, kneeling, crouching, crawling, balancing, or climbing. AR 652. Dr. Olson notes in his assessment that certain factors can trigger migraines including noise, vibration, fumes, bright

---

[3] Mr. Y.'s report was dated October 1, 2000. This is assumed to be a misprint, as that would predate Plaintiff's disability onset date by approximately twenty years.

sunlight, and prolonged standing. AR 654. On February 13, 2023, Dr. Olson again reported Plaintiff had, among other active problems, osteoarthritis of the lumbar spine, injury of coccyx, chronic lower back pain, and pain in the coccyx. AR 547.

2. Dr. Jessica Durr

Dr. Jessica Durr is a psychological consultative examiner. On November 14, 2022, Dr. Durr completed a psychological evaluation of Plaintiff at the request of the Department of Social Services. AR 467. During this evaluation, Plaintiff told Dr. Durr that he was diagnosed with posttraumatic stress disorder in 2016, but symptoms of PTSD began in 1998. AR 468. Plaintiff reported to Dr. Durr that he is unmotivated, suspicious, irritable, and does not trust others. *Id.* Plaintiff did not report receiving mental health treatment at the time of the visit but did report he is "in 8-9/10 pain daily." *Id.* Dr. Durr identifies major depressive disorder and alcohol use disorder as possible DSM-5 diagnoses for Plaintiff, while ruling out posttraumatic stress disorder. AR 471. Dr. Durr reports that Plaintiff presents with the ability to understand, remember, and carry out detailed instructions, as well as an ability to make simple workplace decisions without supervision. AR 471-72. She further notes that Plaintiff has a mild inability to follow normal rules of the workplace and is at risk of calling in sick, not showing up, or needing to leave early. AR 472. Dr Durr reports that Plaintiff has a mild inability to interact appropriately with supervisors, coworkers, and peers. *Id.*

3. Dr. Sial Vakas

On March 30, 2022, Dr. Sial Vakas conducted an internal medicine consultation at the request of the Department of Social Services. AR 418. His findings were based on both formal testing and observation of the Plaintiff. AR 419. Dr. Vakas reports that Plaintiff's lumbar back pain travels to his left lower extremity and worsens with sitting or prolonged standing. AR 422-23. He noted that Plaintiff has no tenderness in his back or lower extremities and no muscle spasms in his back. AR 421. Further, Dr. Vakas assessed that Plaintiff has no functional limitations, including in his ability to walk, sit, stand and conduct postural movements. AR 423.

4. <u>Dr. Larry Kravitz and Dr. J. Lane—Disability Determination</u>

On January 5, 2023, Dr. Larry Kravitz, a psychological consultant, provided a disability determination explanation upon reconsideration of Plaintiff's case. AR 83. Dr. Kravitz concluded that Plaintiff presents with a non-severe mental impairment with mild limitations in the four areas of the 'B' criteria. AR 82. Dr. Kravitz notes that while the mental symptoms claimed are present, they do not appear to significantly reduce Plaintiff's functioning. AR 83. Further, Dr. Kravitz reports that Plaintiff, aside from being prescribed psychotropics, does not receive any mental health treatment. *Id.* J. Lane, M.D., a state agency medical consultant, provided administrative medical findings in the same disability determination explanation. AR 81. Dr. Lane reported that Plaintiff's back issues and mild degenerative changes were non-severe at the initial claim, and Plaintiff has not alleged new or worsening conditions. *Id.* Dr. Lane concluded that Plaintiff's physical conditions were non-severe. *Id.*

**D. Vocational Expert's Testimony**

At Plaintiff's ALJ hearing, Vocational Expert ("VE") Nelly K. Katsell testified as to what jobs Plaintiff could perform given his limitations. AR 52-56. She characterized Plaintiff's past work as a security officer at the light exertion level with a Specific Vocational Preparation ("SVP") of 4. AR 53. Next, ALJ Verne asked Ms. Katsell if a hypothetical claimant would be able to perform past work given limitations similar to Plaintiff's. AR 53-55. Ms. Katsell responded that ALJ Verne's posed hypothetical limitations, notably a limitation that would require a hypothetical claimant to sit every 30 minutes, would rule out the past work and would also rule out any application of transferable skills, thus only leaving unskilled work options. AR 53-56. Then ALJ Verne asked Ms. Katsell about the types of jobs to which ALJ Verne's posed limitations would transfer. AR 53-55. Ms. Katsell offered several examples, including (1) ticket taker at the light level with an SVP of 2 and 44,000 jobs available; (2) retail marker at the light level with an SVP of 2 and 38,000 jobs available; (3) laundry worker at the medium level with an SVP of 2 and 48,000 jobs available. *Id.*

**E. The ALJ Decision**

In order to determine whether a claimant meets the definition of disabled, the ALJ employs a five-step sequential evaluation. 20 C.F.R. § 404.1520(a); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.2007); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ determines that a claimant is either disabled or not disabled at any step in the process, the ALJ does not continue on to the next step. *See* 20 C.F.R. § 404.1520(a)(4) *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is "doing substantial gainful activity;" (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity ("RFC"), the claimant can still do his or her "past relevant work;" and (5) whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4). Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's residual functional capacity. *See* 20 C.F.R. § 404.1520(e); *Bray*, 554 F.3d at 1222-23. The burden of proof is on the claimant at steps one through four but shifts to the Commissioner at step five. *Bray*, 554 F.3d at 1222.

The ALJ applied the five-step sequential framework to determine that Plaintiff did not have a disability within the meaning of the Social Security Act from December 21, 2020 through the date of the ALJ's decision. AR 30. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of December 21, 2020. AR 19. At step two, the ALJ determined that Plaintiff had the severe impairment of osteoarthritis of lumbar spine with lumbar back pain. AR 20. The ALJ further determined Plaintiff's medically determinable mental impairments were non-severe, as the impairments resulted in no more than a "mild" limitation in any of the functional areas. AR 22. At step three, the ALJ determined that Plaintiff did not

have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in 20 C.F.R. Part 404, Subpart P, App. 1, noting that he had considered Listings 1.15 and 1.16. AR 23 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ further determined that Plaintiff had the RFC to perform medium work as defined within 20 C.F.R. § 404.1567(c). *Id.*

The ALJ stated the following regarding Plaintiff's RFC:

> "[Plaintiff] can lift and/or carry, push and/or pull fifty pounds occasionally and twenty-five pounds frequently. [He] can stand and/or walk six hours and sit six hours in an eight-hour workday with normal breaks. [He] can frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl."

AR 23. At step four, the ALJ concluded that Plaintiff is capable of performing his past relevant work as a security officer. AR 29 (citing 20 C.F.R. § 404.1565). The ALJ determined working as a security officer does not require the performance of work-related activities precluded by the claimant's residual functional capacity. *Id.*

The ALJ, after determining Plaintiff remains capable of performing his past relevant work as a security officer, did not address the last step of the sequential evaluation process. *Id.*

## LEGAL STANDARD

Section 205(g) of the Social Security Act ("the Act") permits unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. § 405(g). The reviewing court may enter a judgment affirming, modifying, or reversing the Commissioner's decision, and may also remand the matter to the Commissioner of Social Security for further proceedings. *Id.*

A court will set aside the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1128, 1231 (9th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison*

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The evidence must be "more than a mere scintilla, but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The court will uphold an ALJ's findings when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)). "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).

The court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Derosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985)). If the evidence is nonconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

**DISCUSSION**

For purposes of the Social Security Act, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant carries the initial burden of proving disability. 42 U.S.C. § 423(d)(5); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). Here, the ALJ found that Plaintiff was not disabled. AR 30. Plaintiff challenges that finding on three bases: (1) the ALJ failed to reconcile his mental findings in the 'B' criteria at steps two and three of the sequential evaluation process with the limits he assessed in the RFC determination; (2) the ALJ failed to properly evaluate the opinion of psychological consultive examiner, J.J. Durr, Ph.D.; and (3) the ALJ failed to provide sufficient reasons

for rejecting Plaintiff's subjective symptom allegations. ECF No. 15 at 4.[4]

**A. The ALJ's Improperly Evaluated Plaintiff's Mild Mental Limitations in the RFC Determination.**

In assessing residual functional capacity, the ALJ is obligated to consider "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe.'" *Bentley v. Saul*, 817 Fed. Appx. 424, 427 (9th Cir. 2020) (quoting 20 C.F.R. § 404.1545(a)(2)).

Plaintiff contends that the ALJ erred by failing to reconcile his mental findings in the "B" criteria at step two with the limitations he assessed in the RFC determination. ECF No. 15 at 6. Specifically, Plaintiff argues that the ALJ offered no explanation for his reliance on an RFC with no mental limitations. ECF No. 20 at 5. Defendant disagrees, maintaining that because Plaintiff had no more than mild mental limitations in any area of functioning, the ALJ appropriately did not include mental limitations in his RFC finding. ECF No. 29 at 2.

In making his arguments, Plaintiff heavily relies on the unpublished Ninth Circuit opinion of *Hutton v. Astrue*, 491 Fed. Appx. 850 (9th Cir. 2012) and the numerous district court cases that cite to the opinion. In *Hutton*, the Ninth Circuit reversed the ALJ for failure to consider the effect of mild PTSD when determining the RFC and in his hypotheticals to the VE. 491 Fed. Appx. 850, 850 (9th Cir. 2012). Following this decision, multiple district courts within the Ninth Circuit have remanded social security cases due to ALJs' failure to adequately address mild mental impairment limitations in formulating RFCs. *See Frary v. Comm'r of Soc. Sec.*, No. 1:20-CV-00260-SAB, 2021 WL 5401495, at *7-14 (E.D. Cal. Nov. 18, 2021) (collecting cases).

The Commissioner, however, argues that the Ninth Circuit's opinion in *Woods v. Kijakazi* confirmed that mild limitations resulting in a non-severe mental impairment do

---

[4] Page numbers are based on the CM/ECF pagination.

not require express findings in the RFC. ECF No. 18 at 4; *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). In *Woods*, the ALJ assessed the plaintiff's mental limitations at Step Four by addressing and rejecting a medical opinion containing certain mental limitations. 32 F.4th at 794. The court found that the ALJ properly rejected the medical opinion, and after properly rejecting the medical opinion relating to plaintiff's mental limitations, the ALJ considered the record and determined that there were no significant mental limitations left to include in the RFC. *Id*. In essence, "[t]he ALJ does not necessarily need to incorporate non-severe limitations into the RFC, but the ALJ must consider those limitations in the analysis underlying the formulation of the RFC." *Anna C. v. O'Malley*, 734 F. Supp. 3d 1123, 1131 (D. Or. 2024); *Ruben A. v. SSA Comm'r*, No. 24-CV-07137-TSH, 2025 WL 2899226, at *9 (N.D. Cal. Oct. 10, 2025); *Radford v. Comm'r of Soc. Sec.*, No. 1:25-CV-00828-GSA, 2025 WL 3280781, at *9 (E.D. Cal. Nov. 25, 2025).

Here, the facts of the instant case are distinguishable from *Woods*. First and as detailed in the following section, the ALJ erred in evaluating Dr. Durr's medical opinion and thus erred as to the RFC assessment to the extent it did not properly account for Dr. Durr's opinion. *See K.F. v. Kijakazi*, No. 20-cv-08629-LB, 2022 WL 207661, at *12 (N.D. Cal. Jan. 24, 2022) ("Because the court remands for reconsideration of the medical-opinion evidence, and because the RFC was based partly on the medical record, the court remands on this ground too."). Second, while the ALJ considered the non-severe limitations in its Step Two findings, AR 20-21, the ALJ did not explain why the RFC contains no mental restrictions, *id*. at 23-29. This is in error because mild mental impairments should be addressed when formulating the RFCs. *Kitty S. v. Kijakazi*, No. EDCV 21-00390-JEM, 2022 WL 2117160, at *6 (C.D. Cal. June 13, 2022). The ALJ should also provide reasons for not including the non-severe impairment. *See Hutton v. Astrue*, 491 F. App'x 850, 850-51 (9th Cir. 2012); *Gates v. Berryhill*, No. 16-CV-00049-AFM, 2017 WL 2174401, at *3 (C.D. Cal. May 16, 2017). "On the present record, it cannot be determined what would have happened had the ALJ considered Plaintiff's mild social functioning limitation when assessing the RFC…" *Gates*, 2017 WL 2174401, at

*3. Accordingly, the ALJ's examination of Plaintiff's mental limitations in formulating the RFC was in error.

**B. The ALJ Did Not Reasonably Consider the Opinion of Psychological Consultative Examiner, J.J. Durr, Ph. D.**

When considering medical opinions and prior administrative findings, an ALJ will consider the supportability of the opinion, consistency of the opinion, relationship with the claimant, specialization of the medical source, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors for consideration are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). An ALJ's "decision to discredit any medical opinion [] must simply be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Here, the ALJ acknowledged Dr. Durr's opinion that Plaintiff has a mild inability to follow the normal rules of the workplace and is at risk of calling in sick, not showing up, or needing to leave early. AR 28. The ALJ further notes Dr. Durr's opinion states that Plaintiff has a mild inability to interact appropriately with supervisors, coworkers, and peers. *Id.* The ALJ found this opinion unpersuasive, as it is "not consistent with the overall record." *Id.* To support this determination, the ALJ points to a lack of treatment from a mental health care provider and normal psychiatric/neurologic examinations throughout the record. *Id.*

"[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. "[T]he ALJ must articulate how he considered the most important factors of supportability and consistency." *Kramer v. Kijakazi*, No. 20-cv-2065-GPC-AHG, 2022 WL 873630 at *9 (S.D. Cal. Mar. 24, 2022). While the ALJ pointed to other facts within the record, including the Plaintiff's lack of treatment from a mental health provider, the ALJ fails to adequately explain his reasoning, specifically how he "considered the supportability and consistency of the opinion." *Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012 at *3 (W.D. Wash. Nov 10, 2020). Here, the ALJ stated that the opinion is not persuasive because it is not

"consistent with the overall medical record" but fails to explain how the additional facts in the record are inconsistent with Dr. Durr's opinion. AR 28. For example, the ALJ points to the record's support of mild limitations in the 'B' criteria of the listings as inconsistent to Dr. Durr's testimony but fails to explain how the mild limitations found do not support or are not consistent with Plaintiff's mild inability to follow normal rules of the workplace. *Id.* Since the ALJ did not provide an adequate explanation for rejecting Dr. Durr's medical opinions, the rejection of such was erroneous.

**C. The ALJ Improperly Rejected Plaintiff's Subjective Symptom Testimony.**

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must assess "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

The ALJ "determine[s] credibility, resolve[s] conflicts in the testimony, and resolve[s] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The decision "must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to…any subsequent reviews the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* (emphasis in original) (quotations omitted). The ALJ "may consider a range of factors in assessing credibility, including (1) 'ordinary techniques of credibility

evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain…it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 680-81.

Here, the ALJ found that the record established that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," thus satisfying the first step. AR 29; *see also Lingenfelter*, 504 F.3d at 1036. However, the ALJ rejected Plaintiff's subjective symptom testimony, concluding that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 29. Therefore, the Court must determine whether the ALJ supplied clear, specific, and convincing reasons for disregarding Plaintiff's subjective symptom testimony. *See Lingenfelter*, 504 F.3d at 1036.

In his step two analysis, the ALJ appears to reject Plaintiff's subjective symptom testimony for two reasons: (1) the objective evidence "does not corroborate the claimant's allegations" and (2) Plaintiff testified that he could participate in daily activities "that contradict his allegations." AR 29.

1. <u>Objective Medical Evidence</u>

"An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion, is insufficient…" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (internal quotation marks omitted). "The ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints." *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)) (internal quotation marks

omitted). Furthermore, the ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Meneses v. Berryhill*, No. ED CV 16-1061-PLA, 2017 WL 598759, at *4 (C.D. Cal. Feb. 14, 2017) (citing *Brown-Hunter,* 806 F.3d at 493). If the ALJ's credibility finding is supported by the record, the reviewing court may not second guess that finding. *Dominguez v. Colvin*, 927 F. Supp. 2d 846, 865 (C.D. Cal. 2013).

In the ALJ's opinion, the ALJ found the Plaintiff's statements to be "inconsistent because the objective medical evidence does not show that the [Plaintiff's] symptoms are as limiting" as alleged. AR 26. The ALJ noted that Plaintiff's back pain was treated conservatively and that Plaintiff used his Tramadol sparingly. *Id*.

While the ALJ attempted to provide specific reasons for rejecting Plaintiff's subjective symptom testimony, the ALJ only highlights medical findings that do not provide strong support to Plaintiff's testimony. The fact that Plaintiff's back pain was treated conservatively and that certain medicines were used sparingly does not provide clear and convincing reasons for rejecting Plaintiff's testimony. *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("Providing a summary of medical evidence…is not the same as providing clear and convincing reasons for finding a claimant's symptom testimony not credible."); *see also Brown-Hunter*, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."). Given the ALJ's failure to identify specific statements in Plaintiff's testimony as not credible, the ALJ's reasoning here is legally insufficient to discount Plaintiff's credibility. *Stone v. Saul*, No. 2:18-cv-02862-CKD, 2020 WL 1332946, at *6 (E.D. Cal. Mar. 23, 2020).

2. <u>Daily Activities</u>

An ALJ may consider Plaintiff's daily activities in order to make a credibility determination. *See e.g., Diedrich v. Berryhill*, 874 F.3d 634, 648 (9th Cir. 2017); *Thomas*

*v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (quoting *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997)); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (listing daily activities as a factor the ALJ considers in determining the nature and severity of claimant's symptoms). However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). "One does not need to be 'utterly incapacitated' in order to be disabled." *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The Ninth Circuit has stated that "if a claimant is able to spend a *substantial* part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," the ALJ may be justified in disregarding the claimant's symptom testimony. *Fair*, 885 F.2d at 603. In other words, the ALJ may only disregard the Plaintiff's subjective symptom testimony if the level of Plaintiff's daily activities is inconsistent with his claimed limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Here, the ALJ referred to various specific activities of daily living, including "clean[ing] and do[ing] laundry, . . . driv[ing] a car, shop[ing] in stores, and handl[ing] money." AR 26. The ALJ also noted that Plaintiff was "able to drive to Mexico and take a twelve-day vacation . . ." and "has no problem with personal care other than difficulty bending to put his pants and shoes on." *Id.*

The ALJ did not offer specific, clear, and convincing reasons for disregarding Plaintiff's limitations in light of Plaintiff's daily activities. For example, the ALJ noted that Plaintiff can clean and do laundry, but the ALJ did not specify how this activity contradicts Plaintiff's testimony about the severity of his pain or his ability to complete other activities. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("However, the ALJ did not specifically link the testimony about appellant's daily activity to a conclusion that appellant's excess pain testimony lacked credibility."); *Diedrich*, 874 F.3d at 643 ("That Diedrich could participate in some daily activities does

not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period.”). Additionally, the ALJ noted that Plaintiff can “drive a car [and] shop in stores,” AR 26, but the ALJ does not provide any explanation as to why these activities cannot coexist with Plaintiff's testimony that he can “only stand for thirty minutes with taking pain medication.” *Id*. Here, Plaintiff's efforts to participate in daily activities such as driving or cleaning, as described in his testimony, are not signs that he is without a disability. Rather, such efforts show that he endeavors to live a normal life in spite of his injuries. Thus, the ALJ did not provide specific, clear, and convincing reasons to discount Plaintiff's testimony based on his daily activities.

**D. Harmless Error**

The Court now turns to the analysis of whether the ALJ's errors were harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If an ALJ's error is harmless, his decision will not be reversed. *Carmickle v. Comm'r Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008). An error is harmless “where it is inconsequential to the ultimate nondisability determination.” *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054). In other words, a court must determine whether the ALJ's conclusion is supported by substantial evidence despite the error. *Blacksher v. Berryhill*, 762 F. App'x 372, 376 (9th Cir. 2019) (citing *Carmickle*, 533 F.3d at 1162). Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Molina*, 674 F.3d at 1115.

Plaintiff argues the improper consideration of Dr. Durr's opinion and mild mental limitations resulted in the vocational expert not being apprised of the mental restrictions assessed by Dr. Durr. ECF No. 15 at 11, 18. However, the record shows that the VE was presented with a hypothetical reflecting the findings of Dr. Durr and the mild mental limitations identified in Step Two. AR 54. Specifically, the hypothetical included mention of “no interaction with the general public” and “non-social interaction with coworkers and supervisors involving no more than the brief exchange of information or handoff of product.” *Id.* The hypothetical also included limiting understanding to

"simple, routine, repetitive tasks . . ." *Id.* These hypotheticals mirror the mental limitations reported by Dr. Durr, including Plaintiff's "mild inability to interact appropriately with supervisors, coworkers, and peers." AR 28. Thus, the error was "inconsequential to the ultimate nondisability determination" and cannot be ground for reversal. *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054).

However, the record establishes that the ALJ's reasons for their rejection of Plaintiff's subjective symptom testimony are insufficiently, "specific, clear, and convincing." *Smolen*, 80 F.3d at 1281. Consequently, the ALJ's credibility assessment lacks substantial evidence. This error was not harmless, because it impacted the RFC formulated by the ALJ.

## SCOPE OF REMAND

Based upon the above analysis, the case is remanded for further administrative proceedings. On remand, the ALJ shall: (1) reasonably consider the opinion of Dr. J.J. Durr and properly evaluate the supportability and consistency of the opinion; (2) properly evaluate Plaintiff's mild mental limitations in the RFC determination; and (3) properly assess Plaintiff's subjective symptom testimony.

## CONCLUSION

For the foregoing reasons, the Court **REMANDS** this matter to the ALJ for further consideration consistent with this order.

Dated: August 24, 2026

Hon. Gonzalo P. Curiel
United States District Judge